## Case No. 4,240.

EAMES v. RICHARDS.

[3 App. Com'r Pat. 240.]

Circuit Court, District of Columbia. Nov. 19, 1859.

MERRICK, Circuit Judge. The claims in dispute between the parties consist in certain improvements in machines for cutting soles of boots and shoes, and in the specification of appellant are summed up as follows: "Arranging and vibrating the knives around the centers 'p' & 'q' in the manner and for the purposes set forth." In the specification of appellee the invention is stated to consist in "vibrating the knife or knives in the arc of a circle or a curve, approximating thereto in the manner set forth." The claims are identical, amounting to such an arrangement of the cutting apparatus that the knives in their operation shall alternately ascend and descend upon the cutting table in a curved line, the knives being inverted as to their lengths towards one another, so that one cutting out the heel at one side of the table, the other shall cut out the toe on that same side, thus effecting a saving in the leather and in operative power. The reasons of appeal take no exception to any principle of law decided by the commissioner. They only impeach the processes and means by which the commissioner reached his conclusions of fact, and assign substantially two errors in fact: First, that Griffin was not the first to conceive the idea of the improvement in question, and to give such expression to the idea that a person skilled in the business could, from such description, construct a working machine; and, second, that conceding such first expression of the complete idea, he did not use reasonable diligence thereafter, in perfecting the machine and adapting it to use. The first class of reasons which impeach the processes and means by which the commissioner made up his judgment, present no point proper for the consideration of an appellate tribunal.

We have only to deal with the two specific errors of fact just mentioned. In considering the testimony in the cause I have totally disregarded the depositions of Griffin and his wife as altogether incompetent and inadmissible upon an issue to which in form and substance he is a party. It would be of dangerous consequence to the cause of truth and justice to permit an inventor, whenever a contest about the priority and originality of his claim had sprung up, to go into the market with his own oath, and vend it at the highest price to ignorant or corrupt purchasers. The temptations to perjury, in such cases, would often be too great for the infirmity of human nature to resist. The inventor himself being incompetent, his wife cannot be heard, for her interests are always identical with her husband's.

An objection was made by the appellee to the admissibility of the testimony taken on the former interference. The force of the objection I do not perceive. A second interference is nothing more than a rehearing of the same case, granted by way of especial grace (for good cause shown) to the losing party, and to say thereby the testimony originally competent was avoided would be imposing the intolerable burden on the successful party of incurring a second time expense without fault on his part. The circumstances of a new party being introduced upon the second by way of assignment makes no difference in the case. The assignee has no other or greater right than his assignor, and is bound by every act of his assignor done in good faith towards him prior to the assignment. Passing from these objections, and omitting to notice other minor ones not material to real issues between the parties, it appears from the testimony on both sides that the appellant dates his discovery in the month of November, A. D. 1855. Its earliest dawn in his mind was not before that time, and his machine was matured into a patentable shape in January, 1856.

The appellee asserts that his conception of the machine was consummated in December, 1854, and that he presented it by a drawing about that time. If it appears that he anticipated the appellant, it is immaterial by what length of time, whether a day, a month or year, and inasmuch as a number of witnesses, viz: Currier, Frame, Oliver, B. P. Ravel, Woodward, and Wheeler, depose in the most explicit manner to the general fact, that during the spring, summer and early part of the fall of 1855 Griffin fully explained to each of them the principle and mode of operating his sole-cutting machine, and to several of them he exhibited drawings of it, and showed to all of them at different times a mode or models of his invention, it is safe to say that at midsummer, 1855, he had completed the invention. The testimony of B. P. Ravel is distinct and positive on this point. The witness himself being a manufacturer, using and deeply interested in such machines, and scarcely capable of being mistaken in such a matter, being corroborated by the deposition of Charles Merrill and E. A. Ravel, and no attempt made to assail his disinterestedness or his veracity, his deposition alone would be enough to establish the fact in question. There is nothing to break the force of the testimony of this cloud of witnesses anywhere in the record; each sustains the other, and their testimony, moreover, so far confirms the prominent facts deposed to by Solomon Martin, as to rescue his testimony from the discredit with which the appellants have endeavored to overwhelm him. The testimony of W. H. Kimball, if it could be sustained by itself or by external aid, would be the bulwark of the appellant, and would show that all the efforts of Griffin were abortive, and that he had conceived no complete idea of an operative machine before Wilder's machine was finished. But his own self-contradictions are so apparent as to de

stroy any reliance upon the dates he assigns to his construction of Griffin's models.

In his testimony on first interference 5th direct answer, he says he was not employed by Griffin upon his swing arm model until the year 1856, about April, and not until after his marriage (2nd cross), and that he never made but one model for a swing-arm machine (13th cross). In his examination on second interference he admits that he first went to work on the model in November, 1855. Were he not so flatly contra dicted by the witnesses already named, these inconsistencies, coupled with the fact that the perfected model was deposited in the patent office in May, 1856, would destroy our reliance upon his memory of the date of the transactions with Griffin. But his testimony, read by the light of the above-named witnesses, and also of some of the witnesses for the appellant who speak of Griffin's purchase of certain castings from J. O. Marshall and others, proves that while Griffin had fully developed the principle of the swing arm machine, he did not for a moment rest upon that, but was diligently engaged in the effort to arrange the machine so that it would cut all-sized soles with one set of knives, and that all the various drawings, sketches and parts of models which Griffin had at Kimball's shop at different times were brought by him for that purpose, and that the abortive efforts of which Kimball speaks were efforts in the direction of his finally improved machine with wrist joints, &c., and so far from proving a failure in the great principle now in dispute, are cogent evidence, and coupled with ultimate success, conclusive evidence that Griffin was not slothfully resting upon the general thought, but was keeping it back until he could clothe it with the completeness of adaptation to the varying wants of the trade, in the manner finally accomplished.

And in arriving at this conclusion it must be borne in mind, that Griffin is not presented by any part of the testimony when properly weighed, as a mere private of other people's thoughts. At the outset of this case he appears as an inventor of the machine called the "Otis & Griffin Patent," conceded to be in the then state of the art, the best machine known in this business. His thoughts were from that time forth constantly engaged with the subject. He was all the while occupied through the summer and fall of 1855, and the spring of 1856, with these machines. That he did not apply for a patent the moment he had developed his ideas in the model spoken of by Ravel and others, without waiting until he had achieved the wrist joint with its accessories, so far from detracting from his merit, rather commends his case to the favor of the court, since the result has been a greater benefit to the public, springing from a motive within the especial policy of the patent law, viz:—the perfection of his machinery. Upon the whole case I am clearly of opinion that Griffin was the first to conceive and give expression to the idea of the machine in question in such clear and intelligible manner that a person skilled in that business could construct the machine; and that he used reasonable diligence in perfecting his invention and adapting it to use, and that consequently he is entitled to a patent for his discovery as against the junior inventor and patentee, J. W. Wilder.

Now therefore, for the reasons aforesaid, I hereby certify to the Hon. W. D. Bishop, commissioner of patents, that having assigned the time and place for hearing said appeal, and both parties being fully heard by their counsel, I have read and considered the papers in the cause, the reasons of appeal and the response of the commissioner to those reasons, and that there is no error in the decision of the office. The judgment of the commissioner is affirmed, and a patent must be issued to W. D. Richards, assignee of Caleb H. Griffin, as prayed.